UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IDA L. FIGURES,<br><br>            Plaintiff,<br><br>     v.<br><br>FCA US LLC,<br><br>            Defendant. | No. 1:17-cv-00618-DAD-JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES IN PART<br><br>(Doc. No. 101) |

Pending before the court is plaintiff Ida Figures' motion for attorneys' fees, costs, and expenses. (Doc. No. 101.) Pursuant to Federal Rule of Civil Procedure 78(b) and Local Rule 230(g), the court deemed the motion suitable for decision without oral argument. The court has considered the parties' briefs, and for reasons set forth below, will grant plaintiff's motion in part.

**BACKGROUND**

On April 4, 2017, plaintiff commenced this action against defendant FCA US LLC ("FCA") by filing suit in Kern County Superior Court. (*See* Doc. No. 1-1 at 3.) Plaintiff alleged that a new 2013 Dodge Durango that she purchased in 2012 was delivered to her with serious defects and nonconformities to warranty. (*Id.* at 5.) The complaint asserted causes of action for breaches of express and implied warranties, in violation of the Song-Beverly Act, California Civil Code § 1790 *et seq.* (*Id.* at 23–28.) On April 26, 2019, after a three-day trial, the jury returned a

1

verdict in favor of plaintiff and judgment was thereafter entered in favor of plaintiff and against FCA. (Doc. Nos. 85, 86.) The jury awarded plaintiff $93,189.34, comprised of an award of $43,189.34 in restitution and $50,000.00 in civil penalties. (Doc. No. 85 at 4.)

On May 24, 2019, plaintiff filed the pending motion for attorneys' fees, costs, and expenses.[1] (Doc. No. 101.) On June 18, 2019, FCA filed its opposition to the pending motion, and on June 25, 2019, plaintiff filed her reply thereto. (Doc. Nos. 102, 104.)

**LEGAL STANDARD**

Under California's Song-Beverly Act, "if [a] buyer prevails in an action . . ., the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code. § 1794(d). "The plain wording of the statute requires the trial court to base the fee award upon actual time expended on the case, as long as such fees are *reasonably* incurred—both from the standpoint of time spent and the amount charged." *Robertson v. Fleetwood Travel Trailers of CA, Inc.*, 144 Cal. App. 4th 785, 817 (2006).

> It requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable. These circumstances may include, but are not limited to, factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved. If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount. A prevailing buyer has the burden of showing that the fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount.

*Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994) (citation and internal

---

[1] Plaintiff contends that she made reasonable efforts to resolve the payment of attorney's fees with FCA, even offering "a nearly 40% discount on the amount requested by this Motion" and that the offer was rebuffed by FCA. (Doc. No. 101-1 at 12.) While the court has noted plaintiff's contention in this regard, in the court's view it has no relevance to the court's resolution of the pending motion.

2

quotation marks omitted); *see also Goglin v. BMW of North Am., LLC*, 4 Cal. App. 5th 462, 470 (2016). Under a contingent fee arrangement, "a prevailing buyer represented by counsel is entitled to an award of reasonable attorney fees for time reasonably expended by his or her attorney." *Nightingale,* 31 Cal. App. 4th at 105 n.6.

"The determination of what constitutes a reasonable fee generally begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 154 (2006) (quoting *PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000)). The court will apply the lodestar method to the Song-Beverly Act because "the statutory language of section 1794, subdivision (d), is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers." *Robertson*, 144 Cal. App. 4th at 818; *see also Warren v. Kia Motors Am., Inc.*, 30 Cal. App. 5th 24, 35 (2018). Moreover, because "[the California] Supreme Court has held that the lodestar adjustment method is the prevailing rule for statutory attorney fee awards to be applied in the absence of clear legislative intent to the contrary, [the lodestar adjustment method] . . . is applicable to attorney fee awards under section 1794, subdivision (d)." *Robertson*, 144 Cal. App. 4th at 818–19 (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1135–36 (2001); *see also Warren*, 30 Cal. App. 5th at 35–36.).

> [T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.
>
> * * *
>
> As we [have] explained . . .: " '[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable.' "

*Ketchum*, 24 Cal. 4th at 1132 (internal citation omitted).

3

If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Etcheson v. FCA US LLC*, 30 Cal. App. 5th 831, 848 (2018) (quoting *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th 550, 564 (2008)). Instead, the opposing party must demonstrate that the hours claimed are duplicative or excessive. *Premier Med. Mgmt. Sys.*, 163 Cal. App. 4th at 562, 564; *see also First Am. Title Ins. Co. v. Spanish Inn, Inc.*, 239 Cal. App. 4th 598, 606 (2015) ("Although defendants *argued* to the trial court that the 'amount claimed for attorneys fees is not reasonable,' defendants did not respond to First American's evidence with evidence of their own, as required."); *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("The party opposing the fee award can be expected to identify the particular charges it considers objectionable.").

With this guidance in mind, the court turns to consider plaintiff's pending motion.[2]

## ANALYSIS

Plaintiff, as the auto buyer who prevailed in this suit, is entitled to reasonably incurred attorneys' fees, costs, and expenses. *See* Cal. Civ. Code § 1794(d). Here, plaintiff seeks: (1) an award of attorneys' fees in the amount of $109,835.00; (2) a lodestar multiplier of 0.5, in the amount of $54,917.50; and (3) an award of actual costs and expenses incurred in the amount of $14,821.49. (Doc. No. 101-1 at 7.) Thus, plaintiff seeks a total award of fees and costs in the amount of $179,573.99. (*Id.*) FCA contends that the lodestar requested by plaintiff is unreasonable and that an upward multiplier is not warranted in this case. (Doc. No. 102.) FCA also objects to various costs and expenses for which plaintiff seeks reimbursement. (*Id.*)

**A.   Attorneys' Fees Request**

Plaintiff was represented by two law firms in this matter: the Knight Law Group ("Knight Law"), which commenced this action on plaintiff's behalf and provided legal services leading up to trial, and Hackler Daghighian Martino & Novak, P.C. ("HDMN"), which associated into this

/////

---

[2] Each party objects to evidence presented by the other in support of or in opposition to the pending motion. The court has read and considered these boilerplate evidentiary objections and, to the extent that the court considers any such objected-to evidence, those objections are overruled.

4

action to provide services relating to the trial of this action.  (Doc. No. 101-1 at 9–10.)  Knight Law billed a total of $18,442.50 and HDMN billed a total of $91,392.50.  (*Id.* at 13)

        1.        <u>Reasonableness of Number of Hours Billed</u>

The billing records indicate that Knight Law attorneys expended 51.3 billable hours on this action and that HDMN attorneys expended 250[3] billable hours.  (Doc. Nos. 101-2 at 24; 101-3 at 9–12.)  A total of nine Knight Law attorneys and a total of four HDMN attorneys billed time in the prosecution of this action.  (Doc. Nos. 101-2 at 24; 101-3 at 10–18.)

FCA contends that the number of hours billed by both law firms is unreasonable.  First, FCA argues that it served plaintiff with a $55,000 Rule 68 offer on December 14, 2018 and that plaintiff, instead of responding to that offer with a meaningful counteroffer, continued to litigate and incur fees.  (Doc. No. 102 at 4.)  FCA contends that the jury's award of $93,189.34 was only $38,189.34 more than its Rule 68 offer, and that such an increase does not warrant the additional $77,381.25 in attorneys' fees that plaintiff incurred thereafter.  (*Id.*)  Second, FCA contends plaintiff's use of "[two] firms using 13 lawyers and one paralegal" resulted in a duplication of efforts, the costs of which should not be borne by it.  (*Id.* at 4, 9.)  FCA therefore asks the court "to exclude the entire invoice from either [Knight Law] totaling $18,442.50,[] or from [HDMN] totaling $91,392.50."  (*Id.* at 9.)  Third, FCA argues that both firms' billing statements "evidence numerous instances of inappropriate hours billed by senior lawyers . . . to review basic notices and pleadings or to draft them, [as well as] . . . billing for purely clerical time that should be

---

[3] Here, the court tabulated the total number of hours billed by HDMN based on attorney Sepehr Daghighian's declaration and his firm's billing records attached thereto.  (Doc. No. 101-3, Ex. A.)  As in previous Song-Beverly Act actions in which HDMN has appeared before the undersigned, HDMN's billing statement does not tabulate for the court the total number of hours it and its individual attorneys expended on the case.  (*See id.*)  Instead, attorney Daghighian has provided the court a list of singular billing entries in miniscule font spanning nine pages, leaving for the court the task of calculating both the total number of hours HDMN expended as well as the total number of hours of each of its attorneys who billed.  (*See id.*)  The court admonishes HDMN that this practice—saddling the court with a task that is HDMN's responsibility—is entirely inappropriate and a waste of this court's limited resources.  In any future actions before this court, **HDMN is instructed to provide complete tabulations, both for the total hours expended by the firm as well as for its attorneys who bill in the case**, similar to the billing statements provided by Knight Law.  This should not be difficult to accomplish, since most billing entry software presumably feature the ability to globally and individually tabulate hours.

excluded from the lodestar calculation." (*Id.*) Finally, FCA asks the court to reduce the total number of hours attributed to HDMN lawyers due to the firm's practice of billing in quarter-hour increments. (*Id.* at 11.) The court addresses each of FCA's arguments in turn.

FCA's first argument—that the hours billed are unreasonable because plaintiff rejected the $55,000 Rule 68 offer yet incurred an additional $77,381.25 in fees only to settle the matter for a mere $38,189.34 more—is not persuasive. FCA points the court to no authority, and the court is aware of none, that supports its position in this regard. Moreover, the court notes that plaintiff ultimately recovered nearly 70% more than FCA's Rule 68 offer pursuant to the jury's verdict. In other words, plaintiff incurred those additional fees in order to obtain a recovery that was significantly higher than FCA's Rule 68 offer.

Next, defendant argues that plaintiff's employment of thirteen different lawyers from two law firms to litigate this matter was unreasonable. (Doc. No. 102 at 9.) It has been "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (citing *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). Here, FCA has not identified in its opposition any entries in Knight Law and HDMN's billings that indicate a duplication of effort by the lawyers who worked on plaintiff's case during the two years it was pending before this court. For example, FCA argues that attorney Higgins billed "to draft notices of change of counsel (duplicate work)," but does not explain or analyze in what way this task was "duplicate work." (Doc. No. 102 at 10.) Moreover, the fact that HDMN attorneys had to become familiar with the facts of this case, review files, and get up to speed in preparation for the trial of this action does not constitute a duplication of effort. HDMN was brought in to try the case and necessarily had to review files and pre-existing work-product to do so.[4]

/////

---

[4] While under some circumstances a reduction in an award of attorneys' fees due to the number of attorneys who billed time to a case has been found to be within the trial court's discretion, *see Moore v. Hyundai Motor America*, 41 Cal. App. 5th 24, 36–40 (2019), those circumstances are not present here. This case proceeded to trial, with two lawyers from the firm that tried the case on behalf of plaintiff devoting by far the most hours to this matter.

6

Next, FCA contends that the billing statements at issue here "evidence numerous instances of inappropriate hours billed by senior lawyers . . . to review basic notices and . . . for purely clerical time" (*id.* at 9) but does not identify what those instances are. The burden is on FCA "to identify the particular charges it considers objectionable." *Gorman*, 178 Cal. App. 4th at 101. Moreover, the court has conducted its own review of the billing statements and is satisfied that senior attorneys did not excessively bill for tasks that a junior attorney could have handled or for purely clerical tasks.

Finally, FCA contends that HDMN's total hours should be reduced across-the-board because the firm billed its time in quarter-hour increments. (Doc. No. 102 at 11.) A court may impose an across-the-board reduction on hours that are billed by quarter-hour increments when such billing results in an attorney's fees award request reflecting an excessive number of hours. *See, e.g.*, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (affirming district court's twenty percent, across-the-board reduction of hours where this billing practice resulted in inflated time records). In *Welch*, the Ninth Circuit affirmed an across-the-board reduction in hours after the district court had found that "the hours were inflated because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* The Ninth Circuit's review of the time records in *Welch* revealed that they were "replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intra-office conferences." *Id.*

Here, the court finds that HDMN's practice of billing by quarter-hour increments resulted in an inflated amount of attorney time being billed to this matter. For example, HDMN's billing statement indicates various email and telephonic correspondences between HDMN lawyers and opposing counsel, inter-office meetings, and correspondences with the court, plaintiff, and expert witnesses that were billed a minimum of fifteen or thirty minutes. (Doc. No. 101-3 at 10–18.) The court finds that these time entries are almost certainly inflated "because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Welch*, 480 F.3d at 949. Moreover, this is not a lone example; rather a not insignificant amount of the attorney time billed by HDMN to this case is attributable to various

communications billed in fifteen or thirty minute increments. The court will therefore exercise its discretion and apply a twenty-percent, across-the-board reduction to the number of hours awarded to HDMN attorneys in this case. *See Welch*, 480 F.3d at 949; *Cimini v. White*, 2020 WL 343766, at *1 (D. Nev. Jan. 21, 2020) (imposing a 20% reduction in the recoverable hours based primarily on the fact that counsel billed in quarter–hour increments, explaining that "[c]ourts generally look with disfavor on such billing because it is a less reliable indicator of the time actually expended than billing in tenth-hour increments."); *Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018 WL 2298431, at *5 (E.D. Cal. May 21, 2018) (applying a twenty-percent, across-the-board reduction to HDMN's hours billed in quarter-hour increments for similar reasons).

The court has reviewed the Knight Law billing statements at issue here and concludes that the time billed was reasonably incurred in the commencement and prosecution of this action. The court finds the following hours of the Knight Law attorneys to have been reasonably expended in the prosecution of this case:

| Knight Law Attorney | Hours Requested | Hours Awarded |
|---|---|---|
| Attorney Alastair Hamblin | 5.8 | 5.8 |
| Attorney Amy Morse | 2.7 | 2.7 |
| Attorney Christopher Swanson | 1.0 | 1.0 |
| Attorney Deepak Devabose | 5.8 | 5.8 |
| Attorney James Martinez | 2.9 | 2.9 |
| Attorney Kristina Stephenson-Cheang | 11.2 | 11.2 |
| Attorney Raymond Areshenko | 12.0 | 12.0 |
| Attorney Russell Higgins | 4.0 | 4.0 |
| Attorney Steve Mikhov | 5.9 | 5.9 |
| Total Hours | 51.3 | 51.3 |

The court has also reviewed the HDMN billing statements and concludes that, generally, the attorney time billed was reasonably expended in the prosecution of this action. However, as discussed above, the court will exercise its discretion and apply a twenty-percent across-the-board reduction to HDMN's billed hours due to the firm's practice of billing in quarter-hour increments even with respect to various emails and telephone conversations between HDMN lawyers and opposing counsel, inter-office meetings, and correspondences with the court, plaintiff, and expert

8

witnesses when those tasks almost certainly consumed only a fraction of the time billed. In addition, the court will not award fees to attorney Sepehr Daghighian for the four hours he anticipatorily billed to prepare for and appear in-person at the hearing on the pending motion (Doc. No. 101-3 at 12) because the motion was taken under submission without oral argument. Moreover, the court declines to award fee for the full 5.25 hours that attorney Lauren Martin billed to draft the pending motion, nor will it award her the full 5.50 hours attorney Martin anticipatorily billed to draft a reply to FCA's opposition to the pending motion. (*Id.*) The court concludes in this regard that 5.25 hours to draft the pending motion is not reasonable. The court finds that an award of 2.0 hours for that task is reasonable given how brief the motion was and the fact that it is readily apparent from the face of that motion that attorney Martin relied upon pleadings filed by her office in other actions as templates. Similarly, while no evidence of the time actually spent on drafting plaintiff's reply to FCA's opposition was presented to the court, the court finds that an expenditure of 1.5 hours in performing that task is reasonable given how brief the reply was and the fact that it appears that attorney Martin again relied upon pleadings filed in other actions as a template for the reply. Accordingly, the court finds the following hours appropriately attributable to the efforts of HDMN attorneys:

| HDMN Attorney/Paralegal | Hours Requested | Hours Awarded |
|---|---|---|
| Attorney Larry Castruita | 9.0 | 7.2 |
| Attorney Sepehr Daghighian | 85 | 64.8 |
| Attorney Lauren Martin | 139.75 | 106.0 |
| Attorney Eric Schmitt | 7.75 | 6.2 |
| Paralegal Andrea Plata | 8.5 | 6.8 |
| Total Hours | 250 | 191 |

2.   <u>Hourly Rates to be Applied</u>

Next, the court must determine whether the hourly rates requested by plaintiff's attorneys are reasonable. Under California law, when awarding attorney's fees under § 1794(d), the relevant inquiry is whether "the monetary charge being made for the time expended [is] reasonable" under all the circumstances including "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Goglin*, 4 Cal. App. 5th at 470

9

(quoting *Nightingale,* 31 Cal. App. 4th at 104). California courts therefore focus on the reasonable hourly rate for the work performed by the counsel who did that work, regardless of the forum in which that work was performed and without regard to typical hourly rates in the forum in which the matter was litigated.[5] *See Goglin*, 4 Cal. App. 5th at 470 (affirming a fee award applying a hourly rate of $575 per hour in a Song-Beverly Act case on the grounds that the trial court had considered the evidence that the client agreed to compensate counsel at the rate of $575 an hour (later increased to $625), other state and federal courts had awarded the attorney comparable rates in similar cases, and the trial court had observed the attorney's skills first hand, while not even mentioning the prevailing rates in the trial court's area); *see also Filiberto Negrete v. Ford Motor Co. et al.*, No. 5:18-cv-019372-DOC (KKx), 2019 WL 4221397, at *3 (C.D. Cal.

---

[5] In awarding attorneys' fees under the Song-Beverly Act, other district courts have required "[t]he fee applicant . . . [to] produc[e] satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2019 WL 4674368, at *4 (N.D. Cal. Sept. 25, 2019) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987)); *see also Self v. FCA US LLC*, No. 1:17-cv-01107-SKO, 2019 WL 1994459, at *4–5 (E.D. Cal. May 6, 2019); *Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018 WL 2298431, at *5–6 (E.D. Cal. May 21, 2018). Citing to Ninth Circuit and Supreme Court precedent, these courts have stated that the "relevant community" in determining a prevailing market rate is the forum in which the district court sits and then analyze whether the rates requested by counsel are reasonable in light of rates paid to attorneys of similar skill and experience in the forum district. *See, e.g.*, *Self*, 2019 WL 1994459, at *4–6. This, however, is the framework that federal courts apply to motions seeking attorneys' fees pursuant to a federal statute. The court is aware of no authority holding that a federal court must apply that framework when awarding attorneys' fees pursuant to a state statute. Indeed, the California Court of Appeal in *Goglin* did not engage in that forum-based rate analysis and, as evidenced by the many state court fee orders that the parties have pointed this court to, state courts generally do not engage in such an analysis. The undersigned, therefore, considers the pending motion under the standard articulated by California courts and will determine "whether the monetary charge being made for the time expended [is] reasonable" in light of "the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Goglin,* 4 Cal. App. 5th at 470 (internal quotation marks and citation omitted). This approach will appropriately result in plaintiff's counsel being compensated at the same hourly rates they would have received in state court rather than some lower rate based solely on the removal of this action to federal court. Even if the rate determination framework utilized in motions seeking attorneys' fees pursuant to federal statutes were to apply in this case, the undersigned notes that the hourly rates found to be reasonable by this order would be the same under that framework. For, under the "relevant community" analysis, this court would look to the orders of state courts within the Eastern District of California and conclude that those rates are consistent with those prevailing in the community for similar services. *See Tenorio v. Gallardo*, No. 1:16-cv-00283-DAD-JLT, 2019 WL 3842892, at *2 n.1 (E.D. Cal. Aug. 15, 2019).

June 5, 2019) ("Plaintiff has demonstrated that counsel has been awarded attorneys' fees at similar rates under the Song-Beverly Act. [citation omitted.] Such evidence is generally sufficient to show that an attorney's hourly rates are reasonable."). The fee applicant bears the burden of producing satisfactory evidence that the fees incurred were "reasonable in amount." *Goglin*, 4 Cal. App. 5th at 470 (quoting *Nightingale*, 31 Cal. App. 4th at 104); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The Knight Law attorneys request the following hourly rates for its attorneys who worked on this matter:

| Knight Law Attorney | Requested Hourly Rate | Years of Experience |
|---|---|---|
| Attorney Alastair Hamblin | $325.00 | 3 years |
| Attorney Amy Morse | $350.00 | 6 years |
| Attorney Christopher Swanson | $375.00 | 5 years |
| Attorney Deepak Devabose | $275.00 | 5 years |
| Attorney James Martinez | $275.00 | 4 years |
| Attorney Kristina Stephenson-Cheang | $375.00 | 11 years |
| Attorney Raymond Areshenko | $300.00 | 2 years |
| Attorney Russell Higgins | $450.00 | 16 years |
| Attorney Steve Mikhov | $550.00 | 16 years |

(Doc. No. 101-2 at 6–9.)

The HDMN attorneys request the following hourly rates for its attorneys who worked on this matter:

| HDMN Attorney or Paralegal | Requested Hourly Rate | Years of Experience |
|---|---|---|
| Attorney Larry Castruita | $350.00, $385.00 | 8 years |
| Attorney Sepehr Daghighian | $490.00, $550.00 | 14 years |
| Attorney Lauren Martin | $250.00, $275.00 | 2 years |
| Attorney Erik Schmitt | $250.00, $275.00 | 2 years |
| Paralegal Andrea Plata | $75.00 | 2 years |

(Doc. No. 101-3 at 2–5.)

In support of the rates requested by her attorneys, plaintiff has submitted the declarations of attorneys Daghighian and Mikhov and rate determinations by courts in other cases for some of the attorneys at issue. (Doc. Nos. 101-2, 101-3.) These declarations provide the rates that the attorneys and other lawyers from their respective firms charged in this matter and aver that the

requested rates are reasonable. (*See* Doc. No. 101-2 at 9–18; 101-3 at 2–5.) Attached to attorney Mikhov's declaration and supplemental declaration are several hourly rate determinations made by state courts in Song-Beverly Act actions with respect to some of the attorneys who worked on this case. (*See* Doc. Nos. 101-2, Exs. E–S; 104-2, Exs. N–BB.) These attachments demonstrate that various superior courts in California have awarded the following rates in Song-Beverly Act actions to the following attorneys at issue here: attorney Mikhov has been awarded hourly rates between $400.00 and $500.00; attorney Morse has been awarded hourly rates between $250.00 and $350.00; attorney Devabose has been awarded hourly rates between $200.00 and $250.00; attorney Stephenson-Cheang has been awarded hourly rates between $300.00 and $350.00; attorney Swanson has been awarded hourly rates between $325.00 and $350.00; attorney Hamblin has been awarded an hourly rate of $325.00; attorney Higgins has been awarded an hourly rate of $400.00; attorney Martinez has been awarded an hourly rate of $275.00; and attorney Areshenko has been awarded an hourly rate of $300.00. Moreover, after reviewing rates awarded by various superior courts in California, the undersigned recently issued an order awarding the following hourly rates to the following attorneys who also appeared in this action: $325.00 for attorney Hamblin; $350.00 for attorney Morse; $250.00 for attorney Devabose; $350.00 for attorney Stephenson-Cheang; $400.00 for attorney Higgins; $500.00 for attorney Mikhov; $300.00 for attorney Castruita; $500.00 for attorney Daghighian; $250.00 for attorney Schmitt; and $75.00 for paralegal Plata. *Sekula v. FCA US LLC*, No. 1:17-cv-00460-DAD-JLT, 2019 WL 5290903, at *7 (E.D. Cal. Oct. 18, 2019).

Because "the reasonable value of attorney services is variously defined as the hourly amount to which attorneys of like skill in the area would typically be entitled," *Ketchum*, 24 Cal. 4th at 1133, the court finds that evidence of what some of the attorneys have previously been awarded when litigating other Song-Beverly actions assists this court in determining the reasonable hourly rates in this case. *See Goglin*, 4 Cal. App. 5th at 470; *Filiberto Negrete*, 2019 WL 4221397, at *3. Having considered the various state court orders submitted by plaintiff, as well as other evidence, the court concludes that the following hourly rates for each of plaintiff's attorneys are reasonable:

| Knight Law Attorney | Hourly Rate to be Awarded | Years of Experience |
|---|---|---|
| Attorney Alastair Hamblin | $325.00 | 3 years |
| Attorney Amy Morse | $350.00 | 6 years |
| Attorney Christopher Swanson | $250.00 | 5 years |
| Attorney Deepak Devabose | $250.00 | 5 years |
| Attorney James Martinez | $250.00 | 4 years |
| Attorney Kristina Stephenson-Cheang | $350.00 | 11 years |
| Attorney Raymond Areshenko | $200.00 | 2 years |
| Attorney Russell Higgins | $400.00 | 16 years |
| Attorney Steve Mikhov | $500.00 | 16 years |
| **HDMN Attorney or Paralegal** | **Hourly Rate to be Awarded** | **Years of Experience** |
| Attorney Larry Castruita | $300.00 | 8 years |
| Attorney Sepehr Daghighian | $500.00 | 14 years |
| Attorney Lauren Martin | $250.00 | 2 years |
| Attorney Erik Schmitt | $250.00 | 2 years |
| Paralegal Andrea Plata | $75.00 | 2 years |

3.  Lodestar Calculation

Based on the hours and hourly rates that the court has awarded plaintiff's attorneys, the lodestar here totals $79,245.00. The court's calculations in this regard are reflected below:

| Law Firm | Legal Professional | Hours Awarded | Hourly Rate Awarded | Lodestar |
|---|---|---|---|---|
| **Knight Law** | Attorney Alastair Hamblin | 5.8 | $325.00 | $1,885.00 |
| | Attorney Amy Morse | 2.7 | $350.00 | $945.00 |
| | Attorney Christopher Swanson | 1.0 | $250.00 | $250.00 |
| | Attorney Deepak Devabose | 5.8 | $250.00 | $1,450.00 |
| | Attorney James Martinez | 2.9 | $250.00 | $725.00 |
| | Attorney Kristina Stephenson-Cheang | 11.2 | $350.00 | $3,920.00 |
| | Attorney Raymond Areshenko | 12.0 | $200.00 | $2,400.00 |
| | Attorney Russell Higgins | 4.0 | $400.00 | $1,600.00 |
| | Attorney Steve Mikhov | 5.9 | $500.00 | $2,950.00 |
| **HDMN** | Attorney Larry Castruita | 7.2 | $300.00 | $2,160.00 |
| | Attorney Sepehr Daghighian | 64.8 | $500.00 | $32,400.00 |
| | Attorney Lauren Martin | 106.0 | $250.00 | $26,500.00 |
| | Attorney Erik Schmitt | 6.2 | $250.00 | $1,550.00 |
| | Paralegal Andrea Plata | 6.8 | $75.00 | $510.00 |
| | | | **Total:** | $79,245.00 |

### 4. Lodestar Multiplier

Next, plaintiff urges this court to apply a multiplier of 0.5 to the lodestar in this case. (Doc. No. 101-1 at 19–24.) Plaintiff argues that the contingent nature of this litigation warrants a 0.2 multiplier, the delay in payment warrants a 0.2 multiplier, and the exceptional result achieved warrants a 0.1 multiplier. (*Id.* at 21.) According to plaintiff, "there always existed the possibility that Plaintiff would not prevail" and that "Plaintiff's attorneys advanced all litigation costs and expenses without reimbursement." (*Id.*) FCA argues that an upward multiplier is not warranted here. (Doc. No. 102 at 16–19.) For the reasons that follow, the court rejects plaintiff's request for application of an upward multiplier under the circumstances of this case.

Under California law the lodestar may be "augmented . . . by taking various relevant factors into account, including (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award." *Robertson*, 144 Cal. App. 4th at 819; *see also Warren*, 30 Cal. App. 5th at 35.

Here, plaintiff does not contend that her attorneys were precluded from seeking other employment. The court finds that the questions involved in this action were not novel or difficult and that, while certainly effective, plaintiff's attorneys did not demonstrate exceptional skill in their presentation of the issues. Plaintiff argues that "[t]his case required a range of specialized knowledge including: (1) an understanding of the full scope of consumer protection laws, . . .; (2) knowledge of the intricacies of automobiles . . .; and (3) knowledge of auto manufactures' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations." (Doc. No. 101-1 at 16.) However, the fact that plaintiff's attorneys had to become familiar with the case is not the type of novelty or difficulty that ordinarily justifies an upward multiplier. Moreover, as plaintiff admits, "[p]laintiff's attorneys have acquired knowledge and insight about these [issues] over the course of many years of litigation," and the attorneys do not "spend unreasonable time preparing pleadings because they are able to use documents from other cases that need only be edited." (*Id.* at 16, 18.) Indeed, the issues presented by this case have recently

14

been addressed in several other actions prosecuted before this court, many of which involved the same attorneys who appeared in this case. *See, e.g.*, *Sekula*, 2019 WL 5290903; *Self*, 2019 WL 1994459; *Hall*, 2018 WL 2298431; *Garcia v. FCA US LLC*, 1:16-cv-00730-JLT (E.D. Cal. March 7, 2018). Finally, with respect to counsel's performance, the court has reviewed the pleadings filed in this action and finds that the skills displayed by counsel were, on balance, average at best. It is readily apparent from the face of the pleadings filed by plaintiff's counsel in this action that counsel relied upon pleadings filed in other similar cases as templates and that some of their filings in this matter even contained references to vehicles, individuals, and issues that had no relation to this action. The undersigned does note, however, that plaintiff's trial counsel (and defense counsel, for that matter) demonstrated notable skills during the trial, including an excellent grasp of the evidence. Nevertheless, the undersigned declines to apply a multiplier solely on the basis of plaintiff's counsel's trial performance since this was a Song-Beverly action of ordinary complexity and difficulty.

      The court also concludes that the contingent nature of this action does not weigh in favor of an upward multiplier. "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important . . . rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Ketchum*, 24 Cal. 4th at 1132.

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.

*Id.* (citation and internal quotation marks omitted). The court concludes that an upward multiplier based on the contingent risk is not warranted here because that factor is outweighed by the other factors the court has considered, namely that this case was not novel, complex, or difficult, especially because the disputed facts and issues to be resolved were minimal.

      Similarly, the court finds that an upward multiplier due to any delay in payment of fees to plaintiff's counsel is unwarranted. Plaintiff contends that "FCA dragged this case until a jury

15

verdict was rendered." (Doc. No. 101-1 at 21.) However, the court is unconvinced that (1) FCA was solely to blame for any delay in resolving this action and (2), even if it was, it does not appear to the court that any delay was so egregious so as to justify an upward multiplier.

Accordingly, the court declines to apply an upward multiplier to the lodestar amount under the circumstances of this case.

**B.      Costs and Expenses Request**

Finally, plaintiff seeks an award for costs and expenses incurred by her counsel in litigating this matter. Plaintiff initially sought $14,821.49 in costs and expenses. (Doc. No. 101 at 2.) This initial sum, however, included costs in the amount of $1,620.03 that were properly pursued through a bill of costs, which is processed by the Clerk of the Court, as opposed to a motion for attorneys' fees and costs. *See* 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d); Local Rule 242. Accordingly, on May 24, 2019, plaintiff filed a bill of costs that was approved by the Clerk of Court in part on June 26, 2019, with costs being taxed. (*See* Doc. Nos. 100, 105.) Now before the court is plaintiff's motion for reimbursement of costs and expenses properly the subject of such a motion in the total amount of $13,201.46. (Doc. No. 101 at 2.) FCA has raised no objection to plaintiff's motion for reimbursement of costs.

The court has reviewed the records for the costs and expenses sought by plaintiff, finds them to be reasonably incurred in prosecuting this case, and finds them to be otherwise recoverable costs. Cal. Civ. Code § 1794(d) (authorizing plaintiffs prevailing in actions brought under the Song-Beverly Act to recover costs and expenses); *see also Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 138 (1995), *as modified on denial of reh'g* (June 22, 1995); *Robertson*, 144 Cal. App. 4th at 817 ("By permitting prevailing buyers to recover . . . costs and expenses, our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible."); *Forouzan v. BMW of North America*, LLC, 390 F. Supp. 3d 1184, 1186–89 (C.D. Cal. 2019). Accordingly, the court concludes that plaintiff is also entitled to a total of $13,201.46 in reimbursements for costs in addition to an award of reasonably incurred attorneys' fees.

/////

**CONCLUSION**

For the reasons set forth above:

1. Plaintiff's motion for attorneys' fees and costs (Doc. No. 101) is granted in part;

2. The court awards $79,245.00 in attorneys' fees based on the lodestar analysis set forth above;

3. The court awards costs, in addition to the amount of the separate bill of costs, in the amount of $13,201.46; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **February 19, 2020**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE